NO. 07-06-0039-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



JULY 3, 2007


______________________________



VALERIE L. MAY, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE COUNTY COURT AT LAW NO. 1 OF LUBBOCK COUNTY;



NO. 2004-489912; HONORABLE L. B. RUSTY LADD, JUDGE


_______________________________




Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

MEMORANDUM OPINION


 Valerie L. May appeals her conviction of driving while intoxicated. Finding no merit
in her challenges to the denial of her motion to suppress, we affirm.

 Police found appellant asleep in the driver's seat of a vehicle stopped in a lane of
traffic. When an officer asked why she was parked in the street, appellant replied she was
too drunk to drive. The police concurred and arrested her for driving while intoxicated.
Appellant filed a pretrial motion to suppress evidence arising from the contact. The only
reporter's record before us is from the hearing on the motion to suppress. It showed Texas
Tech Police Department officer Michael McAlister saw a vehicle stopped in a lane of traffic
on Avenue Q in Lubbock about 3 a.m. The engine was running and lights were on. After
McAlister woke appellant and she said she was too drunk to drive, McAlister contacted the
Lubbock Police Department to investigate. City police officer James Green performed field
sobriety tests and arrested appellant. At the hearing appellant stipulated she was
intoxicated at the time she was interviewed by officer Green. There was no evidence of
how long appellant had been stopped in the roadway, or when she had been drinking
alcohol. 

 At the close of the hearing appellant cited Reddie v. State, 736 S.W.2d 923
(Tex.App.-San Antonio 1987, pet. ref'd), for the proposition that evidence a driver is
intoxicated behind the wheel is insufficient to show operation of a vehicle while intoxicated. 
The trial judge informed the parties he would review the arguments presented and rule on
the motion. The record does not contain a signed order ruling on the motion. (1) Nor is there
a reporter's record from the subsequent hearing at which appellant pled guilty. (2) The
judgment reflects appellant's plea, punishment of 120 days confinement and $500 fine,
with confinement and half of the fine suspended for twelve months. 

 Appellant now presents three issues challenging her conviction. Although each
assigns error to the trial court's denial of her motion to suppress, the substance of
appellant's argument in support of each issue contends the evidence was insufficient to
establish she operated the vehicle while she was intoxicated. (3) 

 The State responds that any issue concerning the sufficiency of the evidence was
resolved conclusively by appellant's plea of guilty to the misdemeanor offense of driving
while intoxicated. We agree. 

 Appellant's motion to suppress sought to exclude evidence obtained as a result of
the seizure of appellant, asserting, inter alia, that her detention and warrantless arrest were
not supported by reasonable suspicion or probable cause. As noted, however, at the
hearing on her motion, appellant asserted the position that the evidence she operated the
vehicle while intoxicated was insufficient under the standard set out in Denton v. State, 911
S.W.2d 388, 390 (Tex.Crim.App. 1995). 

 In support of its contention that appellant admitted to each and every element of the
misdemeanor offense by pleading guilty, the State cites Ex parte Williams, 703 S.W.2d
674, 682 (Tex.Crim.App. 1986), and Brown v. State, 507 S.W.2d 235, 238 (Tex.Crim.App.
1974). Both cases point to the statutory provision that in a misdemeanor case punishment
may be assessed by the court "either upon or without evidence, at the discretion of the
court" after a plea of guilty or nolo contendere in open court and waiver of a jury. Tex.
Code Crim. Proc. Ann. art. 27.14(a). To those cases can be added former Presiding Judge 
Onion's opinion for the San Antonio Court of Appeals in Avila v. State, 884 S.W.2d 896,
897 (Tex.App.--San Antonio 1994, no pet.), stating, "A plea of guilty in a misdemeanor
case constitutes an admission of every element of the charged offenses and is conclusive
of a defendant's guilt," and the cases there cited. 

 We do not overlook appellant's reference at oral argument to the statement in Ex
parte Williams that "normally on appeal from a misdemeanor conviction based on a plea
of guilty or nolo contendere there can be no question of the sufficiency of the evidence." 
703 S.W.2d at 678 (emphasis added). We are unable to perceive any reason in this case,
however, to deviate from that normal rule. Finding appellant's guilty plea left no question
of the sufficiency of the evidence, we overrule her three issues and affirm the trial court's
judgment.


 James T. Campbell

 Justice




Do not publish.








 
1. The record does contain a handwritten note directing the preparation of a written
order denying the motion. The State does not challenge appellant's representation the
motion was denied and we will assume the trial court ruled as indicated in the note. See
Tex. R. App. P. 33.1(a)(2) (adverse ruling is prerequisite to complaint on appeal).
2. See Tex. R. App. P. 34.6(c)(5); McDougal v. State, 105 S.W.3d 119, 121
(Tex.App.--Fort Worth 2003, no pet.) (addressing requirement that all evidence admitted
at trial be included in appellate record when challenge to sufficiency of evidence is raised). 
3. The State's brief also cites Montoya v. State, No. 02-03-0151-CR, 2004 Tex.App.
Lexis 3464, 2004 WL 814957 (Tex.App.-Fort Worth 2004, no pet.) (memo op., not
designated for publication), and Avila, 884 S.W.2d at 898, in support of an argument that
appeal of the denial of a motion to suppress is not a proper vehicle to challenge the
sufficiency of the evidence supporting a conviction. We need not address that argument. 



benefit of a municipality insofar as the municipality
engages in the exercise of governmental functions, except when that immunity has been
waived. See Fort Worth Ind. Sch. Dist. v. City of Fort Worth, 22 S.W.3d 831, 840 (Tex.
2000); City of Tyler v. Likes, 962 S.W.2d 489, 501 (Tex. 1997). A plaintiff has the burden
to establish a waiver of immunity from suit. Tex. Dep't of Transportation v. Jones, 8
S.W.3d 636, 638 (Tex. 1999). Immunity from suit can only be waived by legislative
consent or constitutional amendment, and any such waiver must be expressed in clear and
unambiguous language. Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 696 (Tex.
2003); Travis County v. Pelzel & Assocs. Inc., 77 S.W.3d 246, 248 (Tex. 2002); Tex.
Natural Res. Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 854 (Tex. 2002); see also
Tex. Gov't Code Ann. §311.034 (Vernon Supp. 2004-2005) (providing that "[i]n order to
preserve the legislature's interest in managing state fiscal matters through the
appropriations process, a statute shall not be construed as a waiver of sovereign immunity
unless the waiver is effected by clear and unambiguous language").

 In response to the City's jurisdictional challenge, appellees contend that its immunity
from suit is waived by what they reason is the clear and unambiguous language of section
51.075 of the Code which states, "[t]he municipality may plead and be impleaded in any
court." Tex. Loc. Gov't Code Ann. §51.075 (Vernon 1999). This contention is buttressed,
they argue, by the undisputed fact that the City is a home rule municipality whose own city
charter gives it authority to "sue and be sued," and to "plead and be impleaded in all courts
and places and in all matters whatever." See Lubbock City Charter, Art. II, §1. Thus, we
must first determine whether the language of either the City's charter or section 51.075
clearly and unambiguously waives the City's immunity from suit.

 With regard to the "sue and be sued" language found in the City's charter, we
believe that the determination made by our Supreme Court in Missouri Pacific Railroad Co.
v. Brownsville Navigation District, 453 S.W.2d 812 (Tex. 1970) is significant and
determinative. In that decision, the Court held that a statute which provides that a state
entity can "sue and be sued" complies with the legislative permission requirement waiving
immunity from suit. Id. at 813. Our conclusion requires a discussion of the case.

 The case arose from an incident in which a brakeman for the Missouri Pacific
Railroad died after being knocked from a train ladder by a crane that had been left too
close to the track. The brakeman's beneficiaries filed suit against the Missouri Pacific
Railroad which, in turn, sought indemnity from the Brownsville Navigation District. The
railroad's indemnity claim was based upon a contract between the railroad and the
navigation district, which prohibited the district from allowing certain objects to be placed
close to the railroad track. The trial court had granted the district's plea to the jurisdiction
on the basis that the district was a subdivision of the state and the requisite consent had
not been given. That holding was affirmed by the Court of Civil Appeals. 

 However, the Supreme Court, in the course of its opinion reversing the lower court, 
noted that the navigation district was governed by a provision of a 1925 act which provided
that all navigation districts created under the act, acting by and through its commissioners,
had the power to "sue and be sued in all courts of this State in the name of such navigation
district." Id. at 813. At issue was whether the phrase sue and be sued in all courts of the
state was a waiver of the district's immunity from suit. In reversing the lower court, the
Supreme Court opined that "[i]n our opinion [the navigation district statute] is quite plain
and gives general consent for [the] District to be sued in the courts of Texas in the same
manner as other defendants." Id.

 The majority of our intermediate appellate courts who have considered the question
have regarded Missouri Pacific as binding precedent and that similar "sue and be sued"
provisions supply the requisite consent to sue the government entity involved. See, e.g.,
United Water Services, Inc. v. City of Houston, 137 S.W.3d 747, 755 (Tex. App.--Houston
[1st Dist.] 2004, pet. filed) (city charter clearly waived city's immunity from suit); Alamo
Cmty. College Dist. v. Browning Constr. Co., 131 S.W.3d 146, 152-53 (Tex. App.--San
Antonio 2004, pet. filed) (holding that "sue and be sued" language in Education Code
subsection 11.151(a) waives immunity from suit); Goerlitz v. City of Midland, 101 S.W.3d
573, 577 (Tex. App.--El Paso 2003, pet. filed) (holding that "sue and be sued" waived
immunity from suit); Tarrant County Hosp. Dist. v. Henry, 52 S.W.3d 434, 449 (Tex. App.--
Fort Worth 2001, no pet.) (holding Health Code subsection 281.056(a) "sue and be sued"
language waived immunity from suit); Bates v. Tex. State Tech. College, 983 S.W.2d 821,
827 (Tex. App.--Waco 1998, pet. denied) (holding that Education Code section 135.55,
which states that "board may sue and be sued" grants consent to sue Texas State
Technical College); Engelman Irrigation Dist. v. Shields Bros., Inc., 960 S.W.2d 343, 348
(Tex. App.--Corpus Christi 1997, pet. denied) (concluding that "sue and be sued" language
in Water Code section 58.098 "provided clear and unambiguous consent for the Irrigation
District to be sued"); Loyd v. ECO Res., Inc., 956 S.W.2d 110, 122 (Tex. App.--Houston
[14th Dist.) 1997, no pet.) (holding Water Code provision stating that water district could sue
and be sued waived immunity from suit); Knowles v. City of Granbury, 953 S.W.2d 19, 23
(Tex. App.--Fort Worth 1997, pet. denied) (holding that the city's charter providing that it
"may sue and be sued" waived its immunity from suit).

 We recognize there is a divergence of opinion among the courts of appeals in
Texas, with a minority of them differing with our conclusion that the Missouri Pacific "sue
and be sued" ruling is binding precedent in instances such as that before us. See, e.g.,
City of Dallas v. Reata Constr. Co., 83 S.W.3d 392, 398 (Tex. App.--Dallas 2002), rev'd on
other grounds, No. 02-1031, slip op., 2004 Tex. Lexis 303 (Tex. April 2, 2004); Jackson v.
City of Galveston, 837 S.W.2d 868, 871 (Tex. App.--Houston [14th Dist.] 1992, writ denied);
Townsend v. Memorial Med. Center, 529 S.W.2d 264, 267 (Tex. Civ. App.--Corpus Christi
1975, writ ref'd n.r.e.); Childs v. Greenville Hosp. Auth., 479 S.W.2d 399, 401 (Tex. Civ.
App.--Texarkana 1972, writ ref'd n.r.e.). However, the majority of the courts of appeals that
have considered the question agree that the Supreme Court holding in Missouri Pacific that
"sue and be sued" language, such as that before us, "quite plain[ly]" waives consent and
"gives general consent" for the governmental agency to be sued. Missouri Pacific, 453
S.W.2d at 813 -14. 

 In arriving at our decision, we have not overlooked the City's additional argument
that the "sue and be sued" language found in its charter is distinguishable from the "sue
and be sued" language found in Missouri Pacific and from other provisions that have been
held to waive immunity from suit. Specifically, the City relies upon the language that
appears in the last provision of the City Charter, Article II, Section 1, stating that it ". . .
shall be subject to all the duties and obligations now pertaining to or incumbent upon said
city as a corporation, not in conflict with the provisions of this Charter, and shall enjoy all
the rights, immunities, powers, privileges and franchises now possessed by said City and
herein conferred and granted." Supporting this argument, the City argues that the City
Charter never mentions the word "waiver" and the only time it mentions the word
"immunities" is where it retains them. Additionally, it reasons that the provision in question
is included in the section of the Charter that speaks to its corporate power and legal
existence which would have nothing to do with a waiver of sovereign immunity. We
disagree with that premise, believing that the language expressing the City has the power
to "sue and be sued" is quite clear, unambiguous and is within the purview of the Missouri
Pacific teaching. Accordingly, because the trial court had jurisdiction to consider the
dispute, the City's first issue is overruled.

Discussion

 In its second issue, the City contends the trial court erred when it determined that
the City had improperly paid its firefighters pursuant to section 143.038(b) of the Local
Government Code. That section provides:

 (B) The department head may designate a person from the next lower
classification to temporarily fill a position in a higher classification. The
designated person is entitled to the base salary of the higher position plus
the person's own longevity or seniority pay, educational incentive pay, and
certification pay during the time the person performs the duties.


Tex. Loc. Gov't Code Ann. §143.038(b) (Vernon 1999). In considering this issue, it is
necessary to note other relevant portions of the Code. Section 143.041(b) & (c)(1)
provides:

 (b) Except as provided by Section 143.038, all fire fighters or police officers
in the same classification are entitled to the same base salary.


 (c) In addition to the base salary, each fire fighter or police officer is entitled
to each of the following types of pay, if applicable:


 (1) longevity or seniority.



Id. §143.041(b) & (c)(1). Section 141.032(b) of the Code reads:


 . . . . each member of the fire or police department is entitled to receive, in
addition to all other money paid for services rendered in the department,
longevity pay of $4 a month for each year of service in the department, not
to exceed 25 years.

 


Id. §141.032.

 In support of this issue, the City argues that in addition to the "longevity" pay for
service with the department required under section 141.032 of the Code, which it pays, it
has also voluntarily established a system by which it pays its firefighters "seniority" pay for
service within a classification. It reasons that although the payment of such "seniority" pay
is permitted by virtue of section 143.041 of the Code, it is not required under any provision
of the Code, nor is there any definition or any standard method in the Code for establishing
such a "seniority" pay system. That being true, it posits, each city is free to establish its
own method of compensating its firefighters and police officers for "seniority pay" if it
desires to authorize such pay. It also emphasizes that the method utilized by the City in
allocating such voluntary "seniority pay" is referable to service within a classification, as
contrasted to the required "longevity" pay, which is referable to service with the department.
The City additionally argues that if appellees' argument be accepted, it would lead to the
unfair result that persons temporarily assigned would be paid more than those permanently
assigned to the higher classifications.

 The thrust of the City's argument is that section 143.038(b) of the Code, which
permits the temporary assignment of employees to higher classification, "clearly provides"
that, in addition to the base pay of the position, such employees are entitled to "longevity
or seniority pay" but not both, and inasmuch as it continues to pay departmental longevity
pay, appellees are not entitled to the seniority pay they claim. 

 In response, appellees challenge the argument that "longevity" pay and "seniority"
pay are two separate and disparate types of compensation. They argue that the two terms
are in reality synonymous terms describing the same type of pay increment to which they
are entitled. Resolution of this argument is crucial to the disposition of the City's second
issue and requires a construction of the term "longevity or seniority" pay.

 Issues of statutory construction are questions of law to be decided by the court
rather than questions of fact. Johnson v. City of Fort Worth, 774 S.W.2d 653, 656 (Tex.
1989). In the Code Construction Act, Chapter 311 of the Government Code, we are
instructed that "[w]ords and phrases shall be read in context and construed according to
rules of grammar and common usage" and that "[w]ords and phrases that have acquired
a technical or particular meaning, whether by legislative definition or otherwise, shall be
construed accordingly." Tex. Gov't Code Ann. § 311.011 (Vernon 1998). The City argues,
and we agree, that we should look first to the words themselves to determine the legislative
intent. The City then reasons that although the term "longevity pay" is not specifically
defined in section 143.038 of the Code, it should be given the same limited meaning as
that assigned in section 141.032, namely, that it is compensation for time served in the
department rather than time served in a particular classification and seniority time in a
classification is something different. It also argues that the statute as written is
unambiguous and requires a conclusion that the City only had to pay the plaintiffs longevity
"or" seniority pay when they were performing temporary duties in higher classifications.

 The crux of the question presented is whether the term "or" as used in the statute
is conjunctive, referring to a synonymous term as contended by appellees, or is disjunctive
and is used to indicate a separate term as contended by the City. Dictionary definitions
of "or" are somewhat helpful in making our decision. For example, in Black's Law
Dictionary, the term "or" is defined as:

 A disjunctive particle used to express an alternative or to give a choice of
one among two or more things. It is also used to clarify what has already
been said, and in such cases, means "in other words", "to-wit," or "that is to
say." The word "or" is to be used as a function word to indicate an
alternative between different or unlike things. [Citation omitted]. In some
usages, the word "or" creates a multiple rather than an alternative obligation;
where necessary in interpreting an instrument, "or" may be construed to
mean "and." [Citation omitted].


Black's Law Dictionary 1095 (6th ed. 1990). In Merriam-Webster's Collegiate Dictionary,
the term is defined as:

 1.- used as a function word to indicate an alternative (coffee-tea) (sink-swim),
the equivalent or substitutive character of two words or phrases (lessen-abate), or approximation or uncertainty (in five-six days).


Merriam-Webster Collegiate Dictionary 872 (11th ed. 2003).


 We are compelled to the conclusion that the term "or" as used in the statute is used
in the disjunctive sense. To accept appellees' interpretation would be to effectively
substitute the word "and" for the "or" used. It is established that as a general rule of
statutory construction, the two terms are not ordinarily interchangeable. Robinson v.
Reliable Life Ins. Co., 569 S.W.2d 28, 30 (Tex. 1978); Bayou Pipeline Corp. v. Railroad
Commission, 568 S.W.2d 122, 125 (Tex. 1978).

 We agree that section 141.032 of the Code by its terms does not require "seniority
pay" to civil service employees. See City of Harlingen v. Avila, 942 S.W.2d 49, 52 (Tex.
App.--Corpus Christi 1997, writ denied); International Ass'n of Fire Fighters v. Baytown,
837 S.W.2d 783, 787 (Tex. App.--Houston [1st Dist.] 1992, writ denied); City of Beaumont
v. Bond, 546 S.W.2d 407, 411 (Tex. Civ. App.--Beaumont 1977, writ ref'd n.r.e.). 

 We also hold that the provision in section 143.038(b) of the Code that requires the
City to pay the employee, while temporarily performing duties in a higher classification job,
"the base salary of the higher position plus the person's own longevity or seniority pay,"
means that he or she is statutorily entitled to either longevity or seniority pay but not both.
Because the Code does not define the manner by which "seniority pay" may be calculated,
if the City voluntarily chooses to compensate the temporarily assigned employee in that
way, it is allowed to devise its own compensation system as long as it does not violate
Chapter 143 of the Code. See Willis v. City of Lubbock, 385 S.W.2d 617, 618 (Tex. Civ.
App.--Amarillo 1964, writ ref'd n.r.e.). This decision requires us to give an affirmative
answer to the City's issue number 2 in which it inquires if the trial court erred in determining
if it had improperly paid its firefighters pursuant to section 143.038(b) of the Local
Government Code.

 Having made that decision, we must decide the City's third issue in which it asserts
that it paid its firefighters properly under section 143.041 of the Code. It is appellees'
contention that if the City's argument that "longevity pay" and "seniority pay" are not
synonymous is accepted by this court, then the step increases within classifications are not
allowable as seniority pay supplements because the City already pays longevity under
section 141.032. That being so, they contend, the step increases constitute impermissible
differences in base salary in violation of the "same base salary" requirement of §
143.041(b) of the Code and the case should be remanded to the trial court for a
determination of back pay to which appellees would be entitled because of the differences.

 However, although the City is not required to pay "seniority pay" for time in a
classification, and there is no set method for paying this type of compensation, it may
voluntarily opt to do so and a step-based system by which a city pays its employees
increments based on the length of service within a classification is a permissible way of
doing so. See Intern. Ass'n of Fire Fighters v. Baytown, 857 S.W. at 787. We agree that
this dispute is analogous to the one before this court in Willis v. City of Lubbock, 385
S.W.2d 617 (Tex. Civ. App.--Amarillo 1964, writ ref'd n.r.e.). In that case, the appellant
had sued the City asserting it had not properly paid him his accumulated vacation pay upon
his resignation from the police department. The court noted that there was no mandatory
provision in the Civil Service Act that required the City to pay its employees for
accumulated vacation time as part of the severance or termination pay of employees
leaving the service. Thus, it reasoned, because the City had voluntarily adopted a policy
of paying this vacation leave to those leaving the service, "it follows the City's method of
calculating such payment is not subject to judicial review." Id. at 618. Likewise, the City's
voluntarily adopted seniority plan does not violate the Civil Service Act and its method of
calculating payments under the plan is not subject to judicial review. Thus, we must also
give an affirmative answer to the City's third issue. 

 Our disposition of the City's second and third issues requires us to reverse the
judgment of the trial court and render judgment here that appellees take nothing by their
suit.


 John T. Boyd

 Senior Justice 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. 
Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2004-05).